**\*\*E-Filed 3/1/8/09\*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>   Plaintiff,<br>   v.<br>LAN LEE AND YUEFEI GE,<br>   Defendants. | No. 5:06 CR 0424 JW<br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO QUASH** |

## I. INTRODUCTION

Defendants Lan Lee ("Lee") and Yuefei Ge ("Ge") are charged with economic crimes including conspiracy, economic espionage, and theft of trade secrets from their former employer NetLogic Microsystems Inc. ("NetLogic"). *See* Superseding Indictment of Lan Lee and Yuefei Ge, filed September 26, 2007. The government alleges that defendants stole a trade secret developed by Taiwan Semiconductor Manufacturing Company, Ltd. ("TSMC"), known as a Simulation Program with Integrated Circuits Emphasis ("SPICE") model, which TSMC shared with NetLogic in the course of TSMC's fabrication of NetLogic semiconductor chips.[1]

In November 2008, defendants served subpoenas *duces tecum* on NetLogic and TSMC

---

[1] As characterized by TSMC, a SPICE model is software that details electrical characteristics and parameters uniquely associated with a particular semiconductor chip manufacturing process. TSMC and its clients, including NetLogic, use such models to predict the performance of a semiconductor chip design prior to manufacture. *See* TSMC's Motion to Quash, filed January 9, 2009, at 2-3.

1

(collectively, the "third-party companies"). *See* Fed. R. Crim. P. 17(c). The subpoenas sought a wide array of documents and information related to the allegedly stolen SPICE model, prompting the third-party companies to file separate motions to quash in January 2009. Since that time, defendants and the third-party companies have made progress in resolving their differences, but some disputed issues remain. Contemporaneous with that meet-and-confer process, the government has indicated that it will be providing a bill of particulars further detailing the trade secret identified in the superseding indictment.[2] With that background in mind and for the reasons set forth below, the third-party companies' motions to quash are each granted in part and denied in part.

## II.  LEGAL STANDARD

In considering a motion to quash, the Court "initially must determine whether the subpoena complies with Rule 17(c), and if so, whether the materials identified therein are privileged." *United States v. Reyes*, 239 F.R.D. 591, 597 (N.D. Cal. 2006).

### A.   **Federal Rule of Criminal Procedure 17(c)**

Rule 17(c) governs subpoenas for production of documentary evidence and designated objects such as books, papers, documents, or data. Fed. R. Crim. P. 17(c)(1). A Rule 17(c) subpoena in a criminal case may not be used for discovery purposes and is not intended to support "fishing expeditions." *United States v. Nixon*, 418 U.S. 683, 700 (1974); *United States v. MacKey*, 647 F.2d 898, 901 (9th Cir. 1981).

A court will grant a motion to quash or modify a subpoena if compliance would be "unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). In order to determine whether a subpoena request is "unreasonable or oppressive," the proponent of the subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity." *Nixon*, 418 U.S. at 700. Furthermore, even upon a showing that the subpoena seeks relevant, admissible, and specific evidence, a court must consider

---

[2] Although no bill of particulars yet appears in the Court's docket, the government sent a letter to defense counsel, dated March 6, 2009, purporting to narrow the scope of the superseding indictment. TSMC has provided the Court with a courtesy copy of this document. Defendants formally moved for a bill of particulars on March 13, 2009.

2

whether the materials are "otherwise procurable reasonably in advance of trial by due diligence," whether the proponent can "properly prepare for trial without such production and inspection in advance of trial," and whether "the failure to obtain such inspection may tend unreasonably to delay the trial." *Id.* at 699; *see also United States v. Fields*, 663 F.2d 880 (9th Cir. 1981) (applying the rigorous *Nixon* standard to third-party subpoenas).

### B. Privilege

"Further, a Rule 17(c) subpoena should be quashed or modified if it calls for privileged matter." *Reyes*, 239 F.R.D. at 598 (internal quotation marks omitted). In this case, as in *Reyes*, two privileges are potentially applicable: the attorney-client privilege and the attorney work product doctrine. The attorney-client privilege shields from disclosure any communications made in confidence by a client to an attorney for the purpose of seeking professional legal advice. *In re Fischel*, 557 F.2d 209, 211 (9th Cir. 1977). The attorney work product doctrine similarly safeguards "written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). In the Ninth Circuit, the test for whether an attorney's work product is protected from disclosure turns on whether the attorney would have generated the material but for the prospect of litigation. *In re Grand Jury Subpoena (Torf)*, 357 F. 3d 900, 910 (9th Cir. 2004). Both the attorney-client privilege and the work product protection may be waived. *Reyes*, 239 F.R.D. at 598.

### III. DISCUSSION

While the third-party companies do not, at this point, challenge the subpoenaed materials under the relevancy prong of *Nixon*, they do contend that the subpoenaed material fails the specificity and admissibility prongs. In addition, NetLogic contends that its subpoena seeks information that is protected by the attorney-client privilege and the work product doctrine.

### A. Specificity

The specificity prong of the *Nixon* test requires Rule 17 subpoena requests to be particularized and to identify specific items or documents that defendants believe in good faith are in existence. *Nixon*, 418 U.S. at 700. The requirement of specificity is not satisfied if the defendants do not know what the evidence consists of or what it will show. *United States v. Aguilar*, No. CR 07-0030 SBA, at *7 (N.D. Cal. August 4, 2008). The mere hope that the documents sought will produce favorable evidence is not sufficient. *Id*.

### 1. Scope of SPICE Model Description

The third-party companies argue defendants' subpoenas should be narrowed to seek only the particular SPICE model at issue in the litigation. TSMC contends that the SPICE model definition currently propounded by defendants is too vague, and therefore any production would be unduly burdensome and require thousands of hours for compliance. NetLogic objects to the current SPICE model definition on similar grounds, arguing that defendants do not know what they are requesting and merely hope to recover other SPICE models that might turn out to be relevant in the underlying case.

The expansive subpoena language at issue here, even after the narrowing achieved through the meet-and-confer process, retains more the flavor of civil discovery than that traditionally found in a criminal Rule 17(c) subpoena. That said, defendants are entitled to all materials comprising the trade secrets identified in the indictment in preparing for their defense. As defendants correctly note, the broad language used in the subpoenas tracks exactly that used in the superseding indictment, and therefore reflects their best effort to identify undisputedly relevant material.

An indictment is intended to inform a defendant of "what he is accused of doing in violation of the criminal law, so that he can prepare his defense." *United States v. Tsinhnahijinnie*, 112 F.3d 988, 991 (9th Cir. 1997). A bill of particulars similarly serves that purpose. Once a bill of particulars is issued, the government is strictly limited to the particulars it has specified within and cannot thereafter amend and expand the charges against defendants. *United States v. Haskins*, 345 F.2d 111, 114 (6th Cir. 1965); *United States v. Murray*, 297 F.2d 812, 819 (2nd Cir. 1962).

As noted above, the government has indicated that it intends to provide a bill of particulars. The bill, the government represents, will identify the trade secret at issue as "TSMC Document T-

4

013-LO-SP-009 Version 1, titled TSMC Spice Model 0.13 um Logic Salicide (1P8M, 1.0v/3.3V) FSG IMD (CL013LV)." Letter to Thomas J. Nolan and Edward W. Swanson, dated March 6, 2009. Because, as noted above, the United States will be bound by that limitation going forward, and assuming that such a representation is finalized in a formal bill of particulars executed by the prosecution, NetLogic subpoena requests 2, 4, 5, 6, 11, and 12 and TSMC subpoena requests 1, 2, 4, 5, 7, 8, 9, 10, 11, 12, 14, 15 16, 18, and 22 shall be modified to the SPICE model definition identified therein.[3]

### 2. Time Period Limitation

According to the superseding indictment, defendants worked at NetLogic until July 29, 2003. The third-party companies seek to circumscribe the time period of defendants' requests for communications and non-disclosure agreements ("NDAs") concerning the SPICE model. Defendants, on the other hand, contend they are entitled to communications and NDAs regarding the SPICE model regardless of when they occurred.

While materials beyond defendants' termination dates might be tangentially related to their defense, imposing a time period limitation of one year from the date defendants left the employ of NetLogic will mitigate the burden on the third-party companies, while still allowing the defense to receive the necessary materials directly related to the underlying criminal prosecution. Accordingly, NetLogic subpoena requests 2 and 3 and TSMC subpoena request 4, all of which seek production of NDAs and other communications between the third-party companies, are limited to the time period ending on July 29, 2004.

### 3. Other Subpoena Requests Challenged on Specificity Grounds

#### a. NetLogic

NetLogic objects to requests 11, 12, 29, and 30, which demand production of documents intended to put defendants on notice that the SPICE model was a trade secret. NetLogic claims that, pursuant to other subpoena requests, it has already agreed to produce specific documents tending to

---

[3] This ruling is contingent upon the filing of a formal bill of particulars. In the event the government fails to do so, the defendants may bring a motion to compel compliance with their Rule 17(c) subpoenas.

5

show defendants had such notice, such as employee manuals and confidentiality agreements. Requests 11, 12, 29, and 30, NetLogic contends, appear to be "catch-all provisions designed to elicit any other documents" tending to show notice, which defendants may have otherwise failed to request. As such, NetLogic concludes, the requests are too vague.

The Court agrees. "A subpoena duces tecum should not require the recipient to determine at his own peril what he is to do, without clear guidelines for compliance." *In re Grand Jury Subpoena: Subpoena Duces Tecum*, 829 F.2d 1291, 1301 (4th Cir. 1987) (striking down subpoena *duces tecum* which required subpoenaed individual to make" judgment calls" as to which documents to produce, at risk of contempt). In this case, it is not NetLogic's job to comb through its business records in an attempt to ascertain which ones could be construed as putting defendants on notice—especially since the obvious candidates such as confidentiality agreements are already being produced. NetLogic's motion to quash is therefore granted as to requests 11, 12, 29, and 30.

NetLogic further contends that request 21, which seeks "[a] separate copy of any portion of the Datasheets that [NetLogic] considers to have been a trade secret as of July 29, 2003," is inappropriate because it requires testimonial and interrogatory-type production outside the scope of a Rule 17(c) subpoena. Defendants are entitled, however, to know exactly which information about the SPICE model was considered a trade secret at the time of the alleged theft, and therefore NetLogic's motion to quash is denied as to request 21.

**b.**     **TSMC**

TSMC objects to request 18, which seeks documents showing that the SPICE model had "monetary value to TSMC as a result of not being known to the public." As with NetLogic requests 11, 12, 29, and 30, this broad language fails to provide clear guidelines for compliance and would require TSMC employees to make judgment calls in their attempts to comply. Accordingly, TSMC's motion to quash is granted as to request 18.

As to Requests 14 and 16, TSMC asserts that it should only be required to produce materials disclosing the entire SPICE model identified as the trade secret, rather than requiring the production of documents containing merely a portion of that item. Nonetheless, disclosure of even a portion or subset of the identified trade secret may be important in determining the status of the alleged secret

6

1  in its entirety. While TSMC is understandably concerned that searching for all materials which may
2  disclose any one of the thousands of parameters contained in the SPICE model may be a significant
3  task, the narrowing effect of the bill of particulars discussed above should aid in that process. This
4  portion of TSMC's motion to quash is therefore denied.

5  Finally, TSMC requests 9, 10, and 15 seek NDAs and details concerning enforcement of
6  NDAs. While the requested documents may be generally relevant, compliance with these requests
7  as drafted is impractical, *see* Yeh Declaration, filed January 9, 2009, at ¶¶ 4-6, and the requests
8  further reflect the type of generalized discovery found in the civil arena but not consistent with the
9  limits contemplated by Rule 17. Accordingly, TSMC's motion to quash as to these three requests is
10 granted.

## B. Admissibility

Next, NetLogic argues that subpoena requests 4, 5 (g, h, i), 22 (i, j, k), 39, and 40 are related to NetLogic's internal investigations of defendants' alleged theft. It follows, NetLogic contends, that these requests fail to meet the *Nixon* standard for admissibility because the requested materials would be inadmissible hearsay at trial. Defendants counter that, although these requests may seek out-of-court statements, the material produced will nonetheless yield admissible evidence because (1) any out-of-court statements by defendants themselves will amount to party admissions; and (2) inconsistent out-of-court statements by employees of the third-party companies could potentially be useful for impeachment purposes at trial. *See* Fed. R. Evid. 613 (governing impeachment of witnesses by prior inconsistent statement); Fed. R. Evid. 801(d)(2) (providing that party admissions are non-hearsay).

It is well-established that "Rule 17(c) does not entitle [defendants] to pre-trial production of impeachment material." *Reyes*, 239 F.R.D. at 601. Likewise, there is no support for the proposition that defendants may utilize Rule 17(c) to subpoena a broad array of documents in the hopes that they may contain party admissions. NetLogic subpoena requests 4, 5 (g, h, i), 22 (i, j, k), 39, and 40, will

therefore be quashed for failure to meet the admissibility prong of *Nixon*.[4]

Defendants nonetheless argue that, even if their subpoena request is quashed, they are entitled to have the Court review the subpoenaed materials *in camera* "so that the court may review the material and disclose it if, ever, when it becomes ripe for impeachment." *Reyes*, 239 F.R.D. at 601. In *Reyes*, however, the Court agreed to *in camera* review of potential impeachment materials only because the defendant had "made a persuasive showing that a third party possesse[d] *specific* material that is *highly relevant* to the criminal charges pending against him, and may become admissible upon the testimony of witnesses who are *likely* to testify at trial." *Id.* (emphases added). Here, defendants have made no such specific showing as that offered by the defense in *Reyes*. *In camera* review, therefore, will not be ordered.

### IV. CONCLUSION

As detailed above, the NetLogic and TSMC motions to quash are each granted in part and denied in part, as follows:

- In light of the impending bill of particulars, NetLogic subpoena requests 2, 4, 5, 6, 11, and 12 and TSMC subpoena requests 1, 2, 4, 5, 7, 8, 9, 10, 11, 12, 14, 15, 16, 18, and 22 are limited to the trade secret identified therein.
- NetLogic subpoena requests 2 and 3 and TSMC subpoena request 4 are limited to the time period ending July 29, 2004.
- NetLogic's motion to quash NetLogic subpoena requests 11, 12, 29, and 30, and TSMC's motion to quash TSMC subpoena requests 9, 10, 15, and 18, are granted on specificity grounds.
- NetLogic's motion to quash is denied as to NetLogic subpoena request 21.
- TSMC's motion to quash is denied as to TSMC subpoena requests 14 and 16.
- NetLogic's motion to quash NetLogic subpoena requests 4, 5 (g, h, i), 22, (i, j, k), 39, and 40

---

[4] NetLogic also contends that this same set of subpoena requests is not subject to subpoena because it is protected under the attorney-client and attorney work product privileges. The Court notes that, to the extent NetLogic has disclosed the results of its internal investigation to the government, it has waived these privileges. *Reyes*, 239 F.R.D. at 602.

8

is granted on admissibility grounds.

• All other subpoena requests remain in full force and effect.

**IT IS SO ORDERED.**

Dated: March 18, 2009

RICHARD SEEBORG
United States Magistrate Judge