1   GIBSON, DUNN & CRUTCHER LLP
    DENIS R. SALMON, SBN 72500
2   SUSANNAH S. WRIGHT, SBN 264473
    1881 Page Mill Road
3   Palo Alto, California 94304
    Telephone: (650) 849-5300
4   Facsimile: (650) 849-5333
    DSalmon@gibsondunn.com
5   SWright2@gibsondunn.com

6   Attorneys for Non-Party
    NETLOGIC MICROSYSTEMS, INC.

7

8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11

12  UNITED STATES OF AMERICA,              CASE NO.   5:06-CR-0424 JW (PVT)

13                 Plaintiff,              **NON-PARTY NETLOGIC
                                           MICROSYSTEMS, INC.'S OPPOSITION
14          v.                             TO DEFENDANTS' MOTION FOR
                                           EVIDENTIARY HEARING**
15  LAN LEE,
       aka Lan Li, and                     Date:   September 16, 2010
16                                         Time:  9:30 am
    YUEFEI GE,                             Court: Hon. Patricia V. Trumbull
17
                   Defendants.
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................. 1

II. FACTUAL BACKGROUND ................................................................................ 2

III. ARGUMENT ...................................................................................................... 5

    A.    DEFENDANTS' MOTION FAILS TO SHOW ANY PREJUDICE
         ARISING OUT OF NETLOGIC'S DOCUMENT PRODUCTION ......................... 5

        1.    Defendants Already Had A Full And Fair Opportunity To
            Question NetLogic Witnesses Concerning The Production Of
            Exhibit 113 ............................................................................................ 5

        2.    The Retrial Of The Trade Secrets Count Nullifies Any Claim
            Of Prejudice ......................................................................................... 6

    B.    THE EVIDENCE ALREADY BEFORE THE COURT REVEALS
         THAT NETLOGIC ACTED IN GOOD FAITH ........................................... 7

    C.    DEFENDANTS' REQUESTED RELIEF IS WITHOUT ANY LEGAL
         SUPPORT ..................................................................................................... 8

        1.    Defendants' Motion Improperly Seeks Unauthorized Criminal
            Contempt Sanctions ............................................................................. 8

        2.    Defendants Seek Additional Remedies Not Provided For By
            the Rules .............................................................................................. 9

        3.    Defendants' Motion Is An Unauthorized Attempt To Obtain
            Pretrial Depositions Of Witnesses In a Criminal Matter ............................. 10

IV. CONCLUSION .................................................................................................. 10

1

2

# TABLE OF AUTHORITIES

3

Page(s)

4

## CASES

5

6

*Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.,*
539 F.3d 1039 (9th Cir. 2008) ................................................................ 8

7

*NLRB v. A-Plus Roofing, Inc.,*
39 F.3d 1410 (9th Cir. 1994) ................................................................. 9

8

9

*United States v. Armstrong,*
781 F.2d 700 (9th Cir. 1986) ................................................................. 9

10

11

*United States v. Consolidated Productions, Inc.,*
326 F.Supp. 603 (C.D.Cal.1971) ........................................................... 8

12

*United States v. Crawford Enterprises, Inc.,*
643 F.Supp. 370 (S.D. Tex. 1986) ........................................................ 9

13

14

*United States v. Rylander,*
714 F.2d 996 (9th Cir. 1983) ................................................................. 8

15

16

*United States v. Ye,*
436 F.3d 1117 (9th Cir. 2006) ............................................................. 10

17

*Young v. United States ex rel. Vuitton et Fils S.A.,*
481 U.S. 787 (1987) .............................................................................. 9

18

## STATUTES

19

20

18 U.S.C. § 401(3) ................................................................................. 9

## RULES

21

22

Fed. R. Crim. Proc. 15(a)(1), Advisory Committee Notes ..................... 10

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# I.  INTRODUCTION

NetLogic Microsystems, Inc. ("NetLogic"), respectfully submits the following response in opposition to Defendants' Motion for Evidentiary Hearing.  Defendants' motion seeks an unprecedented "evidentiary hearing" concerning a document produced by NetLogic over ten months ago, in October 2009.  Despite the fact that they made no objection to the production of this document at that time, nor during several weeks of trial, nor at any point in the ten months that have elapsed, Defendants now assert that an evidentiary hearing is somehow urgent and necessary to remedy an unsubstantiated claim of "prejudice."   In reality, this motion simply represents Defendants' effort to get a second bite at the apple, before a different judge, ten months after a trial in which Defendants had every opportunity to question the relevant witnesses concerning the document at issue.  In addition, this motion misstates the circumstances surrounding the production of "Exhibit 113," including NetLogic's good-faith compliance with the Court's prior order, and fails to cite to any authority supporting the extraordinary pretrial procedure sought by Defendants' motion.  For the reasons set forth below, Defendants' motion should be denied.

First, Defendants have failed to show any prejudice resulting from NetLogic's production.  Even if Defendants' claims regarding the document at issue and its manner of production by NetLogic were accurate, Defendants have now had the document for over ten months, they will have had an ample opportunity to conduct a pretrial investigation before the new trial in December 2010, and they will be entitled to examine witnesses again at the upcoming trial.  The absence of prejudice is made even more obvious by the fact that Defendants already extensively cross-examined NetLogic concerning the production of this document during the trial in October and November 2009.  This examination revealed that the document at issue was not "exculpatory," as Defendants claim, but rather reinforced the fact that NetLogic's datasheets were not distributed outside the company in the absence of a non-disclosure agreement.  Second, Defendants' characterization of NetLogic's good-faith response to Defendants' subpoenas is highly inaccurate and misleading.  A true recounting of the circumstances surrounding NetLogic's document production would confirm that there is no support whatsoever for a contempt inquiry at this time, anymore than there was ten months ago when Defendants had the opportunity to raise these issues before Judge Ware.  Third, Defendants have

NON-PARTY NETLOGIC MICROSYSTEMS, INC.'S OPPOSITION TO DEFENDANTS'
MOTION FOR EVIDENTIARY HEARING                          CASE NO. 5:06- CR-0424 JW

1   failed to cite any legal support for the notion that contempt sanctions are appropriate against a non-

2   party victim under these circumstances.  Indeed, Defendants provide no support for the novel

3   "evidentiary hearing" procedure that they now seek, which appears to be nothing more than an

4   attempted to circumvent the rule against depositions of government witnesses before a criminal trial.

5         In the end, Defendants' motion resurrects stale facts in an effort to put the victim, and the

6   Court, through the burden of an unnecessary and unauthorized pretrial sideshow.  NetLogic

7   respectfully requests that Defendants' motion be denied.  In the alternative, NetLogic requests that

8   this Court refer the Defendants' motion to Judge Ware, as he presided over the original trial in this

9   matter, heard evidence concerning the production of the document at issue and is familiar with

10   Defendants' use of this document at trial, and would therefore be best suited to address whether,

11   given the record in this case, there is a sufficient basis to justify an evidentiary hearing.

12   ## II.  FACTUAL BACKGROUND

13         This case arose in 2003, when the FBI, after having received information from an anonymous

14   source (which later was revealed to be the wife of one of the Defendants), alerted NetLogic to the

15   fact that its confidential and proprietary information might have been misappropriated.  The

16   government requested that NetLogic provide information to aid in the federal investigation.

17   NetLogic cooperated with the government's investigation and provided information as requested by

18   the government.  NetLogic did not instigate the government's investigation that led to the charges in

19   this case, and Defendants have identified no evidence to suggest that NetLogic acted in any way

20   other than as the victim of a possible crime being investigated by the authorities.

21         Defendants' motion miscasts the nature and extent of NetLogic's compliance with their

22   multiple prior subpoenas.  The motion focuses on one document out of approximately 20,000 pages

23   of documents produced by NetLogic as a result of the extensive discovery requested by Defendants

24   in this case.  Beginning in late 2008, over five and a half years after the occurrence of the incidents

25   giving rise to this case, Defendants first began serving a series of subpoenas upon NetLogic.

26   Defendants continued serving subpoenas upon NetLogic until the end of May 2009, just a few weeks

27   before trial was originally scheduled to begin.  *See* Docket No. 187, Exhibit 1.  These subpoenas

28   contained dozens of requests for an overwhelming number of documents.  NetLogic agreed to

Gibson, Dunn &
Crutcher LLP

NON-PARTY NETLOGIC MICROSYSTEMS, INC.'S OPPOSITION TO DEFENDANTS'
MOTION FOR EVIDENTIARY HEARING             CASE NO. 5:06- CR-0424 JW

1    provide documents to Defendants in response to many of the subpoena requests, but objected to

2    certain requests that did not comply with the requirements of Federal Rule of Criminal Procedure

3    17(c).  After an initial hearing before Judge Seeborg in January 2009, Defendants withdrew a number

4    of their original subpoena requests and revised others.  Thereafter, Judge Seeborg ultimately quashed

5    Defendants' contested subpoenas, in whole or in part, sustaining the majority of NetLogic's

6    objections.[1]  *See* Docket Nos. 127, 154, and 177.

7         In response to the first three subpoenas Defendants served, and which were addressed by

8    Judge Seeborg's orders on March 18, 2009 and April 24, 2009, NetLogic performed a good-faith

9    search of all documents accessible to it in 2009 and produced 19,484 pages of documents to

10   Defendants on May 8, 2009.  In addition, in response to a fourth subpoena, NetLogic produced 97

11   additional pages of documents to Defendants on June 3, 2009.

12        Trial in this matter began on October 20, 2009.  While preparing for his appearance in court,

13   NetLogic's General Counsel, Roland Cortes, gained access to an obsolete document server

14   containing outdated archives from several years earlier that had only recently been restored at

15   NetLogic.  Mr. Cortes took this opportunity to review the restored document server to determine

16   whether any additional documents might be located on it related to this criminal matter.  Mr. Cortes

17   discovered a potentially related document, dated September 5, 2002 and entitled "Document Status

18   Matrix," which is a table listing the names of various datasheets that pertained to certain ISO policies

19   prepared by NetLogic in 2002. RT 1571:8-10 (Mr. Swanson: "You found [Exhibit 113] in some

20   restored version of your earlier computers; right?" Mr. Cortes: "That's correct.")

21        The table indicated that the two datasheets at issue in this matter, the 5512 and the 5512GLC,

22   were not to be distributed outside the company in the absence of a non-disclosure agreement, in

23   accordance with NetLogic's and Mr. Cortes' testimony on this matter.  *See* RT 1565:13-1566:3.

24   There was also a mention of an obsolete datasheet, the "5512LV", on the last page of the table in a

25   section relating to end-of-life products.  *See* RT 1566:3-14.  Despite the fact that the 5512LV

26

27        [1]   In one instance, Defendants sought review of Judge Seeborg's order concerning a contested
          subpoena.  Judge Ware reversed Judge Seeborg's order as to one request and sustained the
28        order quashing the remaining requests.  *See* Docket No. 190.

Gibson, Dunn &
Crutcher LLP

NON-PARTY NETLOGIC MICROSYSTEMS, INC.'S OPPOSITION TO DEFENDANTS'
MOTION FOR EVIDENTIARY HEARING                    CASE NO. 5:06- CR-0424 JW

1    datasheet had been discontinued by September 2002, months before the incidents giving rise to this

2    matter, Mr. Cortes decided to produce the document to Defendants as being potentially responsive to

3    their subpoena requests.  Mr. Cortes provided the document to outside counsel, who immediately

4    served it upon defense counsel and the government with a cover letter explaining its origins.  RT

5    1571:11-13 (Mr. Swanson:  "And as soon as you found it, you turned it over to us; right?" Mr.

6    Cortes: "That's correct.")  *See also* Exhibit A attached to Declaration of Susannah S. Wright, filed

7    contemporaneously herewith.

8            Defendants raised no objection during trial to the production of this document, and introduced

9    it into evidence as "Exhibit 113."  RT 1561:21-1562:17.  Moreover, defense counsel spoke with

10   NetLogic's outside counsel on October 29, 2009 to make sure Defendants understood what the

11   document related to and confirmed with NetLogic's counsel that the document had been located on

12   an archived document server that had only recently been restored.  *See* Wright Declaration, ¶3.

13   Neither at that time, nor at any point in the approximately ten months that have elapsed since

14   production, did Defendants raise any concern about the manner of Exhibit 113's production.  Instead,

15   Defendants introduced the document into evidence at trial and questioned both Mr. Cortes and

16   NetLogic's Director of Marketing extensively regarding the document, including the circumstances

17   surrounding its discovery by Mr. Cortes.  *See, e.g.*, RT 1562:15-1563:4; 1564:10-1571:13; 1572:14-

18   1573:2; 1587:3-1590:19; 1609:3-1613:23; 1622:9-1623:16; 1759:19-1771:13; 1791:22-1793:3.

19   Defendants referenced this document in their closing arguments and in their motion for acquittal,

20   arguing that the document indicated that NetLogic did not adequately protect its datasheets.  *See, e.g.,*

21   RT 2978:8-12 (Mr. Swanson: "They had a policy for handling data sheets.  As you recall, this policy

22   is called the matrix.  And we'll go through this matrix in a little detail, but this matrix has come up.");

23   Docket No. 280, pp. 15-16.

24           Throughout their testimony, Mr. Cortes and Mr. McDermott repeatedly stated that the

25   5512LV datasheet was an end of life product by September 2002 and that Exhibit 113 reflected

26   NetLogic's policy that datasheets for end of life products were not to be distributed.  *See, e.g.*,

27   1566:12-1568:19; 1657:5-1658:22; 1753:6-1754:4.  In his order on Defendants' motion for acquittal,

28   Judge Ware found that the government had presented evidence sufficient for the jury to find

1    Defendants guilty of stealing NetLogic's trade secrets, namely the 5512 and 5512GLC datasheets.

2    Docket No. 327 at 3-4.[2]  Apparently frustrated by Judge Ware's ruling, Defendants have filed the

3    present motion in which they have not only exaggerated the significance of Exhibit 113, but they

4    have also misstated the facts of its discovery and production.

### III.  ARGUMENT

6    **A.    DEFENDANTS' MOTION FAILS TO SHOW ANY PREJUDICE ARISING OUT OF NETLOGIC'S DOCUMENT PRODUCTION**

7

8            NetLogic first learned of Defendants' alleged concerns over the production of Exhibit 113 on

9    August 26, 2010, when Defendants filed this surprise motion.  Defendants have provided no reason

10   for waiting nearly ten months to raise an issue concerning a document that they received, and used, at

11   trial.  More critically, Defendants fail to demonstrate how they can possibly be prejudiced by the

12   production of this document, now that a new trial date has been set for December 2010, 14 months

13   after its receipt.

14           **1.    Defendants Already Had A Full And Fair Opportunity To Question NetLogic Witnesses Concerning The Production Of Exhibit 113**

15           Defendants' request for an "evidentiary hearing" ignores a basic and glaring fact:  they

16   *already had an evidentiary hearing* before Judge Ware in October and November 2009, during which

17   time they not only cross-examined NetLogic's General Counsel, Mr. Cortes, and NetLogic's Director

18   of Marketing, James McDermott, concerning Exhibit 113, they also had the opportunity to recall the

19   witnesses who had already testified, including the two other NetLogic witnesses identified in

20   Defendants' motion, Mr. Jankov and Mr. Srinivasan.  As discussed above, on October 30, 2009,

21   Defendants thoroughly examined Mr. Cortes concerning his search for and production of Exhibit

22   113.  *See, e.g.,* RT 1557:22-1558:2; 1564:10-1568:19; 1610:16-1613:23.  On November 3, 2009,

23   Defendants thoroughly examined Mr. McDermott concerning the creation and use of Exhibit 113 by

24   NetLogic marketing personnel, as well as NetLogic's practices and policies concerning the

25   distribution of datasheets.  *See, e.g.,* RT 1754:13-1773:6; 1791:23-1797:6; 1816:12-1818:17.  At the

26   trial, Defendants referred to Exhibit 113 throughout their presentation to the jury and even cited to it

27

28   _____
     [2]     At the 2009 trial, the jury deadlocked on the counts based upon theft of NetLogic's trade secrets.

Gibson, Dunn &
Crutcher LLP

NON-PARTY NETLOGIC MICROSYSTEMS, INC.'S OPPOSITION TO DEFENDANTS'
MOTION FOR EVIDENTIARY HEARING                          CASE NO. 5:06- CR-0424 JW

1   in their request for dismissal. *See, e.g.,* RT 2978:8-12 (Mr. Swanson: "They had a policy for handling

2   data sheets.  As you recall, this policy is called the matrix.  And we'll go through this matrix in a

3   little detail, but this matrix has come up.")  *See also* RT 3008:6-3010:3; RT 2902:25-2903:10; Docket

4   No. 280, pp. 15-16.  Judge Ware, who heard all this testimony and who reviewed Defendants' motion

5   for acquittal, found that the evidence at trial "was sufficient for a rational trier of fact to find

6   Defendants guilty" of stealing NetLogic's trade secret protected datasheets. Docket No. 327 at 3-4.

7          To the extent that Defendants believed that they were prejudiced *then* by the production of

8   Exhibit 113, they could have raised this issue before Judge Ware.  They could have requested a

9   continuance, additional time for discovery, or a recall of any witnesses who had already testified.  At

10  no point did Defendants request any of this possible relief.  Indeed, at no point did Defendants even

11  suggest to the Court that they had been prejudiced by the circumstances of Exhibit 113's production.

12  Thus, Defendants' contention, ten months after the fact, that they were "prevented . . . from cross-

13  examining [Mr. Jankov and Mr. Srinivasan]" is simply false.  (Motion at 12:20-21.)  Defendants

14  could have done so, but they elected not to do so.

15          **2.      The Retrial Of The Trade Secrets Count Nullifies Any Claim Of Prejudice**

16          Having failed to articulate any cognizable claim of prejudice at the time of trial, Defendants

17  can hardly claim to be prejudiced now.  By the time a new trial is scheduled to begin involving these

18  same issues, they will have had Exhibit 113 in their possession for a total of 14 months.  As a result,

19  Defendants' newfound belief that "the failure to produce Exhibit 113 in a timely [sic] prevented the

20  defense from conducting any pretrial investigation" is simply moot.  (Motion at 12:24-25.)  Within

21  the past week, Defendants have served additional subpoena requests upon NetLogic, several of which

22  concern this same document.  Thus, Defendants will have had a complete opportunity to seek any

23  additional discovery that is permissible under the Federal Rules of Criminal Procedure concerning

24  this document.  Similarly, at the retrial of this matter, Defendants will have the opportunity to cross-

25  examine any relevant witnesses concerning Exhibit 113.

26          In sum, Defendants' claim of prejudice is without merit, and for this reason alone, their

27  motion should be denied.

28

Gibson, Dunn &
Crutcher LLP

6

NON-PARTY NETLOGIC MICROSYSTEMS, INC.'S OPPOSITION TO DEFENDANTS'
MOTION FOR EVIDENTIARY HEARING                    CASE NO. 5:06- CR-0424 JW

**B.    THE EVIDENCE ALREADY BEFORE THE COURT REVEALS THAT NETLOGIC ACTED IN GOOD FAITH**

By this motion, Defendants seek unprecedented sanctions, not because NetLogic refused to produce a document, but because NetLogic *actually produced* a document as soon as it became aware of the document's existence.  Defendants' suggestion that NetLogic's conduct may have been "willful" and merits possible sanctions is wholly unfounded.

Contrary to Defendants' assertions, Mr. Cortes never testified that in 2008 and 2009, when Defendants first served their subpoenas upon NetLogic, the document at issue was still available on his computer and accessible "in minutes."  *See* Motion at 4.  What Mr. Cortes stated was that the document was on the computer system in 2002 and would have been accessible easily *at that time*. RT 1588:5-10 (Mr. Swanson: "It was on your computer system, right, in 2002?" Mr. Cortes: "Yes." Mr. Swanson: "It was something that you could have checked in minutes?" Mr. Cortes: Yes, I could have found out, yes.").  Defendants' misleading characterization of Mr. Cortes' testimony and attempt to portray NetLogic's search for responsive documents as deficient do not stand up to even the most minimal examination.  Once again, Defendants did not request any documents from NetLogic until November 2008, over five and a half years after the incidents giving rise to this matter.  In response to these subpoenas, Mr. Cortes performed a good-faith search of the documents he had previously collected in connection with the case, as well as those available to him at that time on NetLogic's operational document servers.  Those documents were produced to defense counsel.

At no time did NetLogic knowingly withhold any purportedly "exculpatory" information or refuse to comply with the Court's orders.  As evidenced by Mr. Cortes' and Mr. McDermott's lengthy testimony on the subject, Exhibit 113 is not exculpatory.  In fact, the very opposite is true. The document shows that the 5512 and 5512GLC datasheets could not be distributed in the absence of a non-disclosure agreement, and it also indicated that the 5512LV datasheet was an end of life product not intended for distribution at all.  In addition, both the trial record and NetLogic's prompt production of a document from a previously inaccessible server reinforce the reasonableness of the effort made by NetLogic to respond to Defendants' numerous vague, overbroad, and belated requests. It is difficult to imagine how Defendants could obtain new facts from another evidentiary hearing that

Gibson, Dunn & Crutcher LLP

7

NON-PARTY NETLOGIC MICROSYSTEMS, INC.'S OPPOSITION TO DEFENDANTS'
MOTION FOR EVIDENTIARY HEARING                      CASE NO. 5:06- CR-0424 JW

1    would contradict the already established trial record and support a finding of sanctionable conduct on

2    the part of NetLogic.  Having already explored this issue without restriction during the 2009 trial,

3    Defendants have no right to request an extraordinary hearing a year later.

4    **C.      DEFENDANTS' REQUESTED RELIEF IS WITHOUT ANY LEGAL SUPPORT**

5            Defendants' motion fails to cite to any legal authority for the notion that an "evidentiary

6    hearing" is appropriate, much less that contempt sanctions are warranted against a non-party witness

7    under these circumstances.  Indeed, the only cases and rules that Defendants cite relate to a *refusal* to

8    produce responsive documents, rather than a prompt production of newly discovered materials.  *See*

9    Motion at 11.  In the end, even Defendants are unclear as to what remedy they believe would be

10   "appropriate," other than to argue that another evidentiary hearing is necessary.  Motion at 13-14.

11   NetLogic respectfully submits that any such hearing – even on its own – would be procedurally

12   improper, as it would needlessly burden NetLogic witnesses, who have already testified at trial, and

13   serve as an end-run around the rule against pretrial depositions in criminal cases.  It also raises

14   serious issues concerning the appropriate authorities who may pursue such charges before the Court.

15           **1.      Defendants' Motion Improperly Seeks Unauthorized Criminal Contempt
                     Sanctions**

16
17           Defendants incorrectly invoke Federal Rule of Criminal Procedure 17(g) to support their

18   claim for contempt sanctions.  A contempt proceeding is "civil if the purpose is remedial and

19   intended to coerce the person not doing what he is supposed to do" and criminal "when the purpose is

20   to vindicate the authority of the court by punishing the wrongdoer."  *United States v. Consolidated*

21   *Productions, Inc.*, 326 F.Supp. 603, 606 (C.D.Cal.1971).  *See also Koninklijke Philips Elecs. N.V. v.*

22   *KXD Tech., Inc.,* 539 F.3d 1039, 1042 (9th Cir. 2008).  Because NetLogic has already complied with

23   the prior subpoenas through its document productions, any sanction would obviously not be designed

24   to ensure compliance.  As a result, any contempt proceeding under these circumstances must be

25   *punitive* in nature, rather than "remedial" or "coerc[ive]."  Defendant's motion can therefore only be

26   properly characterized as a request for criminal contempt.[3]

27   ───────────────────
        [3]    This conclusion is also supported by Defendants' own repeated references to willfulness, a
               factor necessary only in the context of criminal contempt.  *See United States v. Rylander*, 714
28             F.2d 996, 1003 (9th Cir. 1983).

Gibson, Dunn &
Crutcher LLP

8

1    However, as stated in Federal Rule of Criminal Procedure 42(a)(2), criminal contempt must

2  "be prosecuted by *an attorney for the government, unless the interest of justice requires the*

3  *appointment of another attorney.*" (emphasis added).  Further, this Circuit has ruled that "[a]s a

4  general matter, attorneys for private parties who benefit from a court order may not be appointed to

5  prosecute contempt actions based on violations of that order. . . . such a rule is necessary to avoid not

6  just impropriety, but the appearance of impropriety."  *NLRB v. A-Plus Roofing, Inc.*, 39 F.3d 1410,

7  1419 (9th Cir. 1994) (citing *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 806-809

8  (1987)).  Here, Defendants have made no showing that an attorney for the government would be

9  insufficient, or that the interest of justice requires the court to appoint them as prosecutor.

10  Defendants' attempt to assume that role themselves through an evidentiary hearing is entirely

11  baseless and unprecedented.

12      **2.      Defendants Seek Additional Remedies Not Provided For By the Rules**

13    Defendants also seek, among other things, "testimony by NetLogic employees in open court"

14  and "an instruction . . . to the effect that NetLogic failed to produce [certain] documents," as possible

15  remedies for NetLogic's alleged contempt.  As with Defendants' motion generally, these remedies

16  also lack any legal basis. Under 18 U.S.C. § 401(3), the only remedies available under either civil or

17  criminal contempt are a "fine or imprisonment."  *United States v. Armstrong*, 781 F.2d 700, 703

18  (9th Cir. 1986).

19    Defendants cite *United States v. Crawford Enterprises, Inc.*, 643 F.Supp. 370, 380 (S.D. Tex.

20  1986) for the proposition that courts consider certain factors when determining what sanctions to

21  apply for failure to comply with a subpoena.  The actual holding of this case, however, reinforces the

22  rule that a court in the United States has "the power to punish criminal contempt, in its discretion, by

23  *fine or imprisonment*."  *Id.* at 381 (emphasis added).  In addition, the *Crawford* case is of

24  questionable validity, since it predates the Supreme Court's ruling in *Young* (cited *supra)* and the

25  revisions to Federal Rule of Criminal Procedure 42(a)(2) enacted after *Young*.  Defendants have cited

26  absolutely no case law since the Supreme Court's ruling in *Young* and the revisions to Rule 42(a)(2)

27  supporting the imposition of the sanctions requested in the motion.  Moreover, any discussion of the

28  appropriateness of contempt, of whatever form, should more appropriately be addressed by Judge

Gibson, Dunn &
Crutcher LLP

9

NON-PARTY NETLOGIC MICROSYSTEMS, INC.'S OPPOSITION TO DEFENDANTS'
MOTION FOR EVIDENTIARY HEARING                    CASE NO. 5:06- CR-0424 JW

1    Ware, who presided over the trial, heard the trial evidence concerning the production of the

2    document, and who personally observed Defendants' use of the document at trial.

3        **3.    Defendants' Motion Is An Unauthorized Attempt To Obtain Pretrial Depositions Of Witnesses In a Criminal Matter**

4

5            In the end, a further hearing in this matter would be improper, as it would effectively allow

6    Defendants to circumvent the rule against pretrial depositions of witnesses in criminal cases.  *See*

7    Fed. R. Crim. Proc. 15(a)(1), Advisory Committee Notes.  Defendants identify several potential areas

8    of questioning concerning Exhibit 113 that they say should be addressed in a proposed hearing.  As

9    already noted above, Defendants either asked or had an opportunity to ask these very questions in the

10   initial trial on this matter.  Moreover, they fail to cite any precedent for the notion that they should

11   get a second bite at the very same apple.  NetLogic respectfully submits there is no basis in fact for

12   the questions posed in Defendants' brief, and that any such questions can properly be addressed

13   through cross-examination of witnesses at the second trial scheduled for December 2010, not through

14   some extraordinary pretrial evidentiary hearing.

15           Moreover, this is not the first time in this case that Defendants have attempted to interview

16   witnesses before trial in an evidentiary proceeding.  Defendants' previous attempt to obtain a pretrial

17   evidentiary hearing concerning an alleged withholding of evidence was categorically denied by Judge

18   Ware in 2009.  *See* Docket Nos. 227 and 239.  Defendants' current allegations represent nothing

19   more than the latest iteration of a tactic to take pretrial depositions of government witnesses.  Such

20   pretrial depositions are generally impermissible.  *See* Fed. R. Crim. Proc. 15(a)(1), Advisory

21   Committee Notes; *United States v. Ye*, 436 F.3d 1117, 1123 (9th Cir. 2006) (holding that pretrial

22   depositions of government witnesses are not permitted for discovery purposes).  In sum, Defendants'

23   requested relief should be rejected as an improper attempt to procure discovery outside the lawful

24   constraints of Rule 16 and Rule 17 of the Federal Rules of Criminal Procedure.

25                                  **IV.  CONCLUSION**

26           Defendants' motion fails to demonstrate the existence of any prejudice, consists of inaccurate

27   recasting of the record, is procedurally defective, and ultimately amounts to an attempt to obtain

28

Gibson, Dunn &
Crutcher LLP

10

NON-PARTY NETLOGIC MICROSYSTEMS, INC.'S OPPOSITION TO DEFENDANTS'
MOTION FOR EVIDENTIARY HEARING                        CASE NO. 5:06- CR-0424 JW

1  unauthorized discovery under the Federal Rules of Criminal Procedure.  For all of these reasons,

2  Defendants' request for an evidentiary hearing should be denied.

3

4  DATED:  September 9, 2010                    Respectfully submitted,
                                                GIBSON, DUNN & CRUTCHER, LLP
5
                                                By: _____/s/_____
6                                                          Denis R. Salmon

7                                               Attorneys for Non-Party
                                                NETLOGIC MICROSYSTEMS, INC.
8

9

10  100933131_4.DOC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

---

NON-PARTY NETLOGIC MICROSYSTEMS, INC.'S OPPOSITION TO DEFENDANTS'
MOTION FOR EVIDENTIARY HEARING                        CASE NO. 5:06- CR-0424 JW